# EXHIBIT A

Case 1:09-cv-11686-DPW Document 274-1 Filed 02/23/12 Page 1 of 14



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 90/010,792 | 12/22/2009 | 6,253,216 | 109493-2 | 7326 |

21125         7590         02/23/2012
NUTTER MCCLENNEN & FISH LLP
SEAPORT WEST
155 SEAPORT BOULEVARD
BOSTON, MA 02210-2604

| EXAMINER |
|---|
| ESCALANTE, OVIDIO |

| ART UNIT | PAPER NUMBER |
|---|---|
| 3992 | |

| MAIL DATE | DELIVERY MODE |
|---|---|
| 02/23/2012 | PAPER |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

UNITED STATES PATENT AND TRADEMARK OFFICE

BEFORE THE BOARD OF PATENT APPEALS
AND INTERFERENCES

*Ex parte* Tele-Publishing, Inc.[1],
Appellant and Patent Owner

Appeal 2011-009264
Reexamination Control No. 90/010,792
Patent 6,253,216 B1[2]
Technology Center 3900

Before JAMESON LEE, SCOTT R. BOALICK, and KEVIN F. TURNER, *Administrative Patent Judges*.

TURNER, *Administrative Patent Judge*

DECISION ON APPEAL

Tele-Publishing, Inc., Appellant, appeals under 35 U.S.C. §§ 134(b) and 306 from a final rejection of claims 1-34. We have jurisdiction under 35 U.S.C. §§ 134(b) and 306.

We REVERSE.

---

[1] Tele-Publishing, Inc. is the Patent Owner and the real party in interest (App. Br. 1).
[2] Issued June 26, 2001, to Andrew B. Sutcliffe et al.

Appeal 2011-009264
Reexamination Control No. 90/010,792
United States Patent 6,253,216 B1

STATEMENT OF THE CASE[3]

This proceeding arose from a request for *ex parte* reexamination filed on behalf of Facebook, Inc. on December 22, 2009, of United States Patent 6,253,216 B1 (the '216 Patent), based on U.S. Patent Application 08/876,008 filed June 13, 1997.

The '216 Patent was asserted in *Tele-Publishing, Inc. v. Facebook, Inc.*, No. 1:10-cv-11686-DPW (D. Mass. 2009) (App. Br. 1), where that case is apparently ongoing.

We heard oral arguments from a representative of Appellant on August 3, 2011, a transcript[4] of which is part of the record.

CLAIMED INVENTION

Appellant's invention relates to a method and apparatus for providing a personal page over a network, allowing users to securely display personal information to other users (col. 1, ll. 14-18).

We take independent claims 1 and 29 to be representative:

> 1. A method for providing a personal page on a computer system accessible to a plurality of remote users through a computer network, the remote users having profile information stored in the computer network and accessible to other remote users, comprising the steps of:
>
> a) [acceptable] <u>accepting</u> profile information from a

---

[3] Our decision will make reference to the Appellant's Appeal Brief ("App. Br.," filed December 21, 2010) and Reply Brief ("Reply Br.," filed May 3, 2011), and the Examiner's Answer ("Ans.," mailed March 3, 2011).
[4] Record of Oral Hearing (hereinafter Oral Hr'g Tr.)

Appeal 2011-009264
Reexamination Control No. 90/010,792
United States Patent 6,253,216 B1

plurality of remote users;

b) prompting a page-creating remote user with a plurality of page templates for the personal page and receiving a template selection from the remote user;

c) prompting the page-creating remote user to enter text to the personal page and receiving entered text from the remote user;

d) prompting the page-creating remote user to select or enter graphical information to display on the personal page and receiving the selection or entry from the remote user;

e) storing attributes representing each selection or entry made by the page-creating remote user in one or more databases;

f) providing the page-creating remote user with means to input security parameters for the personal page, the security parameters specifying authorization of at least one other remote user to access the personal page;

g) storing the security parameters in one or more databases; and

h) displaying the personal page upon request only to remote users who are authorized to access the personal page.

29. In a networked computer system having a plurality of remote users, a computer program product comprising computer useable medium having computer readable program code to:

a) store profile information relating to each remote user, the profile information being accessible to other remote users of the system;

b) provide a page-creating remote user with means to create a personal page having personal information;

Appeal 2011-009264
Reexamination Control No. 90/010,792
United States Patent 6,253,216 B1

>c) store attributes representing the personal information in the page-creating remote user's personal page in one or more databases;
>
>d) provide the page-creating remote user with means to select other remote users to whom the page-creating remote user may wish to allow access to the personal page;
>
>e) provide the page-creating remote user with means to input security parameters for the personal page, the security parameters specifying authorization of at least one other selected remote user to view the personal page; and
>
>f) store the security parameters in one or more databases.

## REJECTIONS

The prior art references relied upon by the Examiner in rejecting the claims are:

| | | |
|---|---|---|
| Herr-Hoyman | 5,727,156 | Mar. 10, 1998 |
| de Hond | 5,796,395 | Aug. 18, 1998 |

David Fox & Troy Downing, *Web Publisher's Construction Kit with HTML 3.2* 435-446 (John Crudo ed., Waite Group Press 1996) ("Fox").

Jack L. Hursch and Carolyn J. Hursch, *Working with Oracle* 1-16 (Tab Book Inc. 1987) ("Hursch").

The Examiner rejected the claims on the following bases:[5]

- claims 1-26 and 28-34 under 35 U.S.C. § 102(e) as being anticipated by de Hond (Ans. 3-35);

---

[5] Appellant has made no separate arguments with respect to the obviousness rejections and accepts that the dependent claims, rejected in the obviousness rejections, stand or fall with the independent claims from which they ultimately depend (App. Br. 5-6).

4

Appeal 2011-009264
Reexamination Control No. 90/010,792
United States Patent 6,253,216 B1

- claim 9 under 35 U.S.C. § 103(a) as being unpatentable over de Hond and Herr-Hoyman (Ans. 35-37);
- claim 27 under 35 U.S.C. § 103(a) as being unpatentable over de Hond and Fox (Ans. 37-38); and
- claims 2-8, 11-15, and 17-20 under 35 U.S.C. § 103(a) as being unpatentable over de Hond and Hursch (Ans. 38-46).

ISSUE

Appellant raises numerous arguments as to whether de Hond anticipates the instant claims (App. Br. 6-42; Reply Br. 2-21), some of which we discuss below. We have considered in this decision only those arguments that Appellant actually raised in the Briefs. Arguments which Appellant could have made but chose not to make in the Briefs are deemed to be waived. *See* 37 C.F.R. § 41.37(c)(1)(vii).

The issue arising from the respective positions of Appellant and the Examiner is:

Did the Examiner err in finding that claims 1-26 and 28-34 were anticipated by de Hond under 35 U.S.C. § 102(e)?

FINDINGS OF FACT

1. The '216 Patent is a method and apparatus for providing a personal page over a network, allowing users to securely display personal information to other users (col. 1, ll. 14-18).

5

Appeal 2011-009264
Reexamination Control No. 90/010,792
United States Patent 6,253,216 B1

2. The Specification of the '216 Patent provides that "[a] template is a World Wide Web style page design which includes graphics and page layout information" (col. 8, 48-49).

3. De Hond is directed to a system for publishing and searching interests of individuals (Abs.), where individual users register and are allowed to select "houses" that "visitors" are permitted to visit through database searches (col. 3, ll. 55-60).

4. De Hond discloses that the user supplies information through fillable fields, selects an icon for their house, and sets other options for their house. When another user selects the user's house, based on a search of the database, a screen, based on the user's information and preferences, is sent the other user (col. 9, l. 18 - col. 10, l. 42; figs. 6-10).

5. De Hond discloses that a user is "given the opportunity to design his or her own 'house'" through selection of formats and modular building blocks, as well as design the house's interior using a floor plan of different rooms (col. 4, ll. 3-27).

6. De Hond discloses that a user can initiate a database search which provides a graphical depiction of a street of houses whose owners satisfy the search criteria (col. 11, ll. 13-48; Fig. 14).

PRINCIPLES OF LAW

Anticipation is established when a single prior art reference discloses, expressly or under the principles of inherency, each and every limitation of

Appeal 2011-009264
Reexamination Control No. 90/010,792
United States Patent 6,253,216 B1

the claimed invention. *Atlas Powder Co. v. IRECO, Inc.*, 190 F.3d 1342, 1347 (Fed. Cir. 1999).

> The claims, of course, do not stand alone. Rather, they are part of "a fully integrated written instrument," consisting principally of a specification that concludes with the claims. For that reason, claims "must be read in view of the specification, of which they are a part" . . . [and] the specification "is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term."
>
> *Phillips v. AWH Corp.*, 415 F.3d 1303, 1315 (Fed. Cir. 2005)

(citations omitted).

## ANALYSIS

*Independent Claims 1, 10, 16 and 21*

Independent claim 1 recites, in part, "b) prompting a page-creating remote user with a plurality of page templates for the personal page," with claim 10 reciting "a plurality of page templates for selection for the personal page," claim 16 reciting "a plurality of pre-stored page templates," and claim 21 reciting "a plurality of page templates for displaying a personal page." Appellant argues that de Hond does not describe these features of those claims (App. Br. 40-42). More specifically, Appellant argues that the Examiner's rejection points to "single static Web page in Figure 10 and states that it is an example of a page template," but even if that were correct, it would only amount to single template and not a plurality (App. Br. 41). Appellant also argues that the Examiner's support for the plurality of

Appeal 2011-009264
Reexamination Control No. 90/010,792
United States Patent 6,253,216 B1

templates relies on portions not disclosed by de Hond with respect to use of a template (App. Br. 41-42).

The Examiner finds that de Hond provides for a normal template and a template which allows a user to design their own house and floor plan (Ans. 86). The Examiner also provides that since there is a plurality of houses to choose from, with each house having a floor plan, as part of the page template, de Hond discloses a plurality of templates to choose from (*id.*). The Examiner also finds that since the purpose of the different templates in the instant invention is to create unique, customized personal pages, the rejection should be upheld because de Hond provides such customized pages (Ans. 87). We do not agree.

We find that the Specification of the '216 Patent provides a definition of "template," which we find supports the limitation "page templates" (FF 2). Based on such a definition, i.e., requiring page layout information, we do not find that de Hond discloses *a plurality* of page templates. By whatever means a user inputs information into the forms (Figs. 8-9 of de Hond), a similar page is produced (Fig. 10 of de Hond) (FF 4). What is presented on the resulting page is changed by what information the user enters, i.e., lists may shorten or lengthen, but the layout of the page is unchanged. Similarly, the icons provided are user-selectable, but the template for the page is the same (FF 4). In de Hond, changing from a "castle" to a "camper" does not change the page format of the page provided.

Further to the Examiner's findings (Ans. 86), we do not agree that every house has its own page template. We find that de Hond is silent as to

8

Appeal 2011-009264
Reexamination Control No. 90/010,792
United States Patent 6,253,216 B1

how a user selects rooms for a floor plan or map (FF 5), and how those rooms are presented to a "visitor." It does not appear that it would be accomplished through a page template in de Hond. Appellant may be correct that de Hond is using the house designing and building merely as a metaphor for entering information (App. Br. 40-41), but nonetheless, we find no disclosure of allowing a user to select a particular page template to accomplish the same.

In addition, while the Examiner finds that de Hond provides for customized pages, which is the purpose of the page templates in the instant invention (Ans. 87), we do not find that the same result belies the same method. The cited independent claims recite the use of page templates and any anticipatory reference must teach or make inherent the presentation of multiple page templates to a user. As such, we do not find that a user is presented with a plurality of page templates in de Hond as recited in independent claims 1, 10, 16, and 21. Thus, we find that the Examiner erred in rejecting those claims as being anticipated by de hond.

*Independent Claims 29 and 32*

Claim 29 recites, in part, that the system has program code to "e) provide the page-creating remote user with means to input security parameters for the personal page, the security parameters specifying authorization of at least one other selected remote user to view the personal page," with claim 32 reciting similar subject matter. Appellant argues that the claims require that a user's profile information is accessible to other

9

Appeal 2011-009264
Reexamination Control No. 90/010,792
United States Patent 6,253,216 B1

remote users and that the personal page, which utilizes that profile information, is provided with further restriction (App. Br. 39). Appellant argues that the "houses" of de Hond are accessible by any user who finds them, without further restriction (*id.*).

The Examiner finds that in de Hond, both the profile information and personal page are accessible by other remote users (Ans. 84), and that de Hond discloses that they are separate (*id.*). Additionally, the Examiner finds that the personal page of de Hond is viewable only by those individuals that meet the requirements set forth by the page-creating remote user (*id.*), and that the claims do not require that the personal information be accessible to everyone (*id*). We cannot agree.

Claims 29 and 32 clearly require "security parameters" to allow authorization to view the personal page. In de Hond, the Examiner is correct that the personal page can be restricted by the search the remote user performs (FF 6), but it is unclear how a remote user would access the profile information except through the personal page. The Examiner acknowledges that de Hond teaches both profile information and a personal page, and that they are separate (Ans. 85), but does not reveal how the personal interests and data about the user from the profile information are accessed by the remote user if not via the personal page. In de Hond, there does not appear to be a way to view personal profile information without also being able to view the user's personal page. If the limitation "security parameters" and its recited use in claims 29 and 32 are to have any meaning, it must provide some restriction to access. In other words, if every remote user has access to

Appeal 2011-009264
Reexamination Control No. 90/010,792
United States Patent 6,253,216 B1

both the profile information and a personal page, as in de Hond, then the additional authorization recited in claims 29 and 32 is meaningless. As such, we do not find that remote users are authorized to access the profile information and a personal page differently in de Hond, as recited in independent claims 29 and 32. Thus, we find that the Examiner erred in rejecting those claims as being anticipated by de Hond.

## CONCLUSION

We conclude that the Examiner erred in finding that that claims 1-26 and 28-34 were anticipated by de Hond under 35 U.S.C. § 102(e). As the obviousness rejections are based on the teachings of de Hond applied to the independent claims, we further find that the additional obviousness rejections of the dependent claims were also made in error.

## DECISION

We reverse the Examiner's decision to reject claims 1-34.

<u>REVERSED</u>

11

Appeal 2011-009264
Reexamination Control No. 90/010,792
United States Patent 6,253,216 B1

ack
cc:

<u>FOR PATENT OWNER</u>:
NUTTER MCCLENNEN & FISH LLP
SEAPORT WEST
155 SEAPORT BOULEVARD
BOSTON MA 02210-2604

<u>FOR THE THIRD PARTY REQUESTOR</u>:
COOLEY GODWARD KRONISH LLP
ATTN: PATENT GROUP
777-6th STREET, NW SUITE 1100
WASHINGTON, DC 20001