# EXHIBIT 1



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 90/010,792 | 12/22/2009 | 6,253,216 | 109493-2 | 7326 |

21125          7590          09/01/2011
NUTTER MCCLENNEN & FISH LLP
SEAPORT WEST
155 SEAPORT BOULEVARD
BOSTON, MA 02210-2604

| EXAMINER |
|---|
| ESCALANTE, OVIDIO |

| ART UNIT | PAPER NUMBER |
|---|---|
| 3992 | |

| MAIL DATE | DELIVERY MODE |
|---|---|
| 09/01/2011 | PAPER |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

PTOL-90A  (Rev. 04/07)

1                RECORD OF ORAL HEARING

2      UNITED STATES PATENT AND TRADEMARK OFFICE

3                    ———————

4        BEFORE THE BOARD OF PATENT APPEALS

5             AND INTERFERENCES

6                    ———————

7          *Ex Parte* TELE-PUBLISHING, INC.

8                    ———————

9             Appeal 2011-009264

        Reexamination Control No. 90/010,792

10           Patent No. 4,481,273

11          Technology Center 3900

12                   ———————

13       Oral Hearing Held:  August 3, 2011

14                    ———————

15  Before JAMESON LEE, SCOTT R. BOALICK, and KEVIN F. TURNER,
*Administrative Patent Judges.*

16

17  APPEARANCES:

18  ON BEHALF OF THE APPELLANT:

19        RONALD E. CAHILL, ESQUIRE

20        Nutter, McClennen & Fish LLP

         155 Seaport Boulevard

21        Boston, Massachusetts 02210-2604

22

23

24

25

26

Appeal 2011-009264
Reexamination Control No. 90/010,792
Patent No. 4,481,273

1

2      The above-entitled matter came on for hearing on Wednesday,

3 August 3, 2011, commencing at 2:38 p.m., at the U.S. Patent and Trademark

4 Office, 600 Dulany Street, Alexandria, Virginia, before Deborah Courville, a

5 Notary Public.

6                  P R O C E E D I N G S

7      THE USHER:  Calendar No. 7, Appeal No. 2011-009264, Mr. Cahill.

8      JUDGE TURNER:  Thank you.  Mr. Cahill, do you have a business

9 card that you can give to the Court Reporter?

10      MR. CAHILL:  Yes.

11      JUDGE TURNER:  That's always helpful.  And you'll have 20

12 minutes, and begin whenever you're ready.

13      MR. CAHILL:  Okay.  Well, at the outset, I'd like to ask for relief

14 from the 20-minute limit.  I don't have planned comments that will take up

15 the afternoon, but the Examiner's Answer in this case is 88 pages long.  It's

16 entirely possible that we could come up with subjects to discuss beyond just

17 20 minutes.

18      JUDGE TURNER:  Well, certainly, if we keep you beyond 20

19 minutes, that's certainly understandable.  But if you can aim for 20, we

20 certainly appreciate it.

21      MR. CAHILL:  Okay.  Thank you.  I'll do my best.

22      JUDGE TURNER:  And that's appreciated.  Thank you.

23      MR. CAHILL:  So, we're here today to discuss the Personal Page

24 patent.  This patent grew out of the field of personals advertising, personals

25

26

Appeal 2011-009264
Reexamination Control No. 90/010,792
Patent No. 4,481,273

1   like people looking for a date.  You've probably seen personal ads in

2   newspapers.  You may have even seen them on the web.

3       The key insight that the Inventors made here was to take these

4   personal ads that were on the web and to add something that they called a

5   Personal Page.  The way it plays out in the claims is there is profile

6   information.  Profile information generally corresponds to an advertisement

7   and it is accessible to other remote users, while there is also a Personal Page

8   that users get to build that's protected by a security attribute so that only

9   authorized remote users can see it.  And users get to use that profile

10  information that's accessible to find out about other people and determine to

11  whom do they want to grant that access to their more personal information.

12      So the users find each other and learn about each other from the

13  advertisements and then choose to grant access to others who they wish to

14  have access.  In the specification at column 7, line 9, it discusses this,

15  exactly.

16      There's a method and apparatus of the invention for providing a

17  Personal Page can be used, in conjunction, with a personals online network

18  [PON].  The PON can be implemented over the Internet using HTML pages

19  and CGI programs.

20      The PON may include personal advertisements, as well as more

21  specific profile information, regarding the advertiser and regarding the type

22  of person the advertiser would like to meet.  The PON may provide

23  searching facilities which allow users of the system to search other users'

24  profile in attempt to find a match.

25

26

3

Appeal 2011-009264
Reexamination Control No. 90/010,792
Patent No. 4,481,273

1    One of the key issues on this Appeal is whether the claim language

2    about providing functionality for the users to enter profile information that's

3    accessible to other users is distinct from the Personal Page.  Now, I don't

4    know if the Board has access to the whole file.

5        JUDGE TURNER:  Um-hmm.

6        MR. CAHILL:  There's a page in an earlier paper that I'd like to refer

7    to.  And I could hand it up, if you'd like, so we all have it in front of us.  Or I

8    could just tell you where it is.

9        JUDGE BOALICK:  Was that page in your briefs, by any chance?

10       MR. CAHILL:  It's not in the brief.  It's in the June 16th, 2010

11   response.

12       JUDGE BOALICK:  Why wasn't that page in your brief if it's

13   important?

14       MR. CAHILL:  Well, the issues are discussed in the brief, but there's a

15   chart that's a little bit easier to see on that page.  I could hand it up.  If you'd

16   rather, I could just talk about it.

17       JUDGE BOALICK:  It's in the record.

18       MR. CAHILL:  Would you like --

19       JUDGE TURNER:  Is it already part of the record?  Then, yes, if you

20   want to provide a copy.

21       MR. CAHILL:  Okay.  So that's pages 8, 9, and 10 of the Patentee's

22   June 16th, 2010 response.  And in particular, I'd like you to look at page 10,

23   which has a summary of the amendment filed on February 8th, 2001, in the

24   original prosecution of this patent, where there was interview with Examiner

25   Kindred.  This response was filed, and the claims were allowed a week later.

26

4

Appeal 2011-009264
Reexamination Control No. 90/010,792
Patent No. 4,481,273

1    In each of these five claims, these are five of the six independent

2    claims in this patent, the claims are specifically amended to recite this

3    profile information that is accessible to other remote users.  This, in essence,

4    is why these claims were allowed.  It's because of this distinction.

5    This distinction was put into each of these claims, in this amendment,

6    to get these claims allowed over prior art.  And if you look, for example, at

7    Claim 10, the amendment added, in the preamble, each remote user having

8    profile information, store on the system.

9    Step D was added for providing the page-creating remote user with a

10   means for accessing the profile information of other remote users, for

11   selecting other remote users to whom the page-creating remote user may

12   wish to allow access to the Personal Page.  And then, separately, there are

13   steps for building a Personal Page for inputting security parameters to the

14   Personal Page so that it can be displayed only to the users that the

15   page-creating remote user selects.

16   JUDGE LEE:  What kinds of things are in the Personal Page, which

17   are not, typically in a profile?

18   MR. CAHILL:  As the Examiner has noted, it can be blended.  I

19   mean, profile information is information about the user.  On the Personal

20   Page, the user can add text, can add graphics, and then inputs a security

21   parameter that protects that Personal Page.

22   JUDGE LEE:  I understand, generally, yeah.  But I want some

23   specific examples?

24   MR. CAHILL:  A specific example of what would be different about

25   the profile information versus the Personal Page?

26

1   JUDGE LEE:  Yeah.  Typically, what would you find in the protected

2   Personal Page that's typically not in the general profile --

3   MR. CAHILL:  The --

4   JUDGE LEE:  -- accessible to everybody?

5   MR. CAHILL:  Okay.  Well, the profile information might include

6   things, bibliographic information about the user, how old they are, what

7   gender they are.  Might include things like the personal ad.

8   The Personal Page would include more personal information that the

9   user doesn't want 10 million Internet users to see.  And it might be family

10   information.  There might be medical information.  There might be

11   information about the kind of person that that page-creating remote user

12   would like to form a relationship with.  And that person doesn't necessarily

13   want all of that information to be free on the Internet.  And so it's on the --

14   JUDGE LEE:  Yeah.  And your spec talks about users, such

15   examples?

16   MR. CAHILL:  I don't know if it gives examples like that.  But there

17   is an actual Personal Page for Cool Guy in here.  It's mostly --

18   JUDGE LEE:  Well, I don't mean, like, exact example.

19   MR. CAHILL:  But now --

20   JUDGE LEE:  Could you give some examples of what might be in the

21   Personal Page which would not be in the profile?

22   MR. CAHILL:  I mean, all that it really says is that you can put more

23   personal information on it that you don't wish to share.

24   JUDGE LEE:  That's all, something generic like that?

25

26

Appeal 2011-009264
Reexamination Control No. 90/010,792
Patent No. 4,481,273

1     JUDGE TURNER:  But the profile information is separate from the
2  page.  I'm assuming the page, in the preferred embodiment, is HTML.  So
3  there may be all sorts of things there, that, in order to see the page, they have
4  to have a browser active there.
5     MR. CAHILL:  Yes.
6     JUDGE TURNER:  And the personal information is separate from
7  that.  Is it not?  That's sort of your argument?
8     MR. CAHILL:  Yes.  The argument is that not so much where you
9  find it, but the fact that it is distinct in terms of how you access it.
10     JUDGE TURNER:  But where's that in the claim?  I mean, that's sort
11  of what the Examiner says.  You talk about, in Claim 1, for example, having
12  profile information stored in the computer network, and accessible to other
13  remote users.
14     It's not used in your method claim here, such that we provide this, as
15  long as somebody has access.  Other users have access to that profile
16  information.  It seems like even if it's through the page, so I have access to
17  the page and I have access to the information.
18     You acknowledge that they're separate.  I may be getting the
19  information through the page.  But the page may have more "data" than the
20  profile information.
21     So it seems like I can have access to both.  And if I have at least one
22  user who the page is accessible to, seems like that same user would have
23  access to the profile information, at least in certain embodiments, right?
24
25
26

Appeal 2011-009264
Reexamination Control No. 90/010,792
Patent No. 4,481,273

1    MR. CAHILL:  Well, a couple of things about that.  First is the profile

2   information is accessible, and the Personal Page is displayed on request only

3   to authorized remote users because it has this security parameter on it.

4    JUDGE TURNER:  But those those would also be other remote users,

5   wouldn't they?

6    MR. CAHILL:  They would be.

7    JUDGE TURNER:  Right.

8    MR. CAHILL:  But the fact that it's recited differently presumes that

9   they are accessed differently.

10    JUDGE TURNER:  And in my example, they are, I think.  I mean, I

11   have access to the page.  And the page is more than the personal

12   information, I think.  Or maybe you disagree with that, correct?  If I'm going

13   too fast --

14    MR. CAHILL:  Well, if you have --

15    JUDGE TURNER:  -- please point out where my error is.  So I would

16   say that if I have access to the page, I have access to more than just the

17   personal information, don't I, presumably?

18    MR. CAHILL:  Well, at that point you might.  And in fact, you

19   would, in general, have access to the profile information, regardless.

20    JUDGE TURNER: Okay.

21    MR. CAHILL:  If the profile information were not on the Personal

22   Page, you would still, once you were granted access to the Personal Page,

23   you would have access to both, because the profile information's --

24    JUDGE TURNER:  And I understand your specification makes that

25   distinction, but I don't see that in the claims.

26

Appeal 2011-009264
Reexamination Control No. 90/010,792
Patent No. 4,481,273

1        MR. CAHILL:  Well, the claims --

2        JUDGE TURNER:  And that's where --

3        MR. CAHILL:  Two things.

4        JUDGE TURNER:  Okay.

5        MR. CAHILL:  The first one, I said just a minute ago, it's recited

6    differently.  So when you say the profile information is accessible to other

7    remote users, and then the Personal Page is protected by a security attribute,

8    so that it is only shown to authorized remote users, authorized and accessible

9    are different things.  And they're different words.  And if you presume that

10   they're the same word, then one of them loses its meaning, which is not,

11   generally, how we interpret claims.

12        Now, the second thing is, I pointed to this language in Claim 10 about

13   how providing the page-creating remote user with a means for accessing the

14   profile information of other remote users, for selecting other remote users to

15   whom the page-creating remote user may wish to allow access to the

16   personal page.

17        It doesn't make sense for both of them to be accessible, at the same

18   time, in the same way, without distinction, if the point, and this is the claim

19   language, is to use one to select to whom you wish to give access to the

20   other.

21        JUDGE TURNER:  But I don't see that in the claim.  I mean, I

22   understand that that's the invention, that I'm supposed to be able to see the

23   profile information and then I don't get to see the page unless I'm allowed

24   permission.  I understand that's the invention.  I'm trying to see where that

25   distinction's raised in the claim.

26

9

Appeal 2011-009264
Reexamination Control No. 90/010,792
Patent No. 4,481,273

1    I understand that the terms are distinct.  I understand that.  They're

2    separate things.  But I don't see where it says, well, you're going to be able to

3    see the profile information of everybody because that's generally available,

4    whereas page information, no.  You're not, unless you aren't restricted.  I

5    don't see that.  I understand it's in the spec.  And that would lead to that.  But

6    I'm not seeing where that would be required by -- of the claim?

7        MR. CAHILL:  You don't think that's required by the passage I just

8    read from Claim 10?

9        JUDGE TURNER:  No.  I don't see that.  You read to me that

10    providing a page creating -- that was E, right, of 10?

11        MR. CAHILL:  It's D.

12        JUDGE TURNER:  Or D?

13        MR. CAHILL:  The part that was amended in Claim 10.

14        JUDGE TURNER:  Well, I think you can do both.  And I think they're

15    separate items.  I mean, I think the page includes more than profile

16    information, I would think.

17        So I understand that you somehow see them as degenerate.

18    Somehow, if I'm accessing the page, and I'm accessing the profile

19    information, that somehow doesn't satisfy it.  But I don't see two separate

20    claim specs.  I can access the page, and I'm getting more than the profile

21    information.  But I'm also getting profile information?

22        MR. CAHILL:  But this claim element talks about using the profile

23    information to determine who gets access to the Personal Page.  Don't they

24    need to be two different things?

25        JUDGE TURNER:  I think they are two different things, but --

26

Appeal 2011-009264
Reexamination Control No. 90/010,792
Patent No. 4,481,273

1    MR. CAHILL:  You use one to determine to whom you will grant

2  authorization to the other.  And there are dependent claims from Claim 1,

3  Claims 23 and 24, that make this same point.

4    JUDGE LEE:  But if the profile information is information about the

5  page, as well as information about the profile, then how would that

6  distinguish between this info from de Hond, where I have this access and I

7  can see, by what type of house and what's registered there, that that's profile

8  information.  Is it not?

9    MR. CAHILL:  In de Hond, when you run a match, you get a street

10  with a bunch of icons on it.

11    JUDGE TURNER:  Right, okay.

12    MR. CAHILL:  And you don't know anything other than these are

13  icons of houses.  You click on it, and you get everything.

14    JUDGE TURNER:  I understand that.  But it seems --

15    MR. CAHILL:  There's no dichotomy at all.

16    JUDGE TURNER:  -- like in order to select the house, I'm getting

17  some profile information.  So the house that I select, that's not profile

18  information?

19    MR. CAHILL:  I don't think it is, because it doesn't have anything --

20    JUDGE TURNER:  It's certainly selected by the user.  The user in de

21  Hond goes in and says, I want a windmill versus I want a camper?

22    MR. CAHILL:  It's an icon selected by the user.

23    JUDGE TURNER:  And so, it seems like that's profile information.

24  It's entered from the user.  So if I can then get my street, and then I'm able to

25  select, it seems like that would non-withstanding whatever we get into in the

26

11

Appeal 2011-009264
Reexamination Control No. 90/010,792
Patent No. 4,481,273

1  other elements of the claim, it seems like that discloses D of Claim 10, I

2  would think, under my formulation.  But please tell me why I'm wrong?

3      MR. CAHILL:  Well, it doesn't because even if you were to say that

4  the icon is profile information, and I don't agree that it is, but even if you

5  said that, I don't look at the icon and decide, based on the icon, I'm going to

6  grant the owner of that icon access to my Personal Page.  The icon isn't used

7  by a remote user to select who gets access to their Personal Page.

8      JUDGE TURNER:  Right, but that's Step E, isn't it, right?  Isn't that

9  for security, by providing the page-creating remote user with a means for

10  accessing the profile information of other remote users for selecting other

11  remote users to whom they may wish to allow access to the personal page.

12      MR. CAHILL:  So to follow through your analogy, I would have to

13  run this match.

14      JUDGE TURNER:  Right.

15      MR. CAHILL:  I would have to get the street with the icons on it.

16  And based on the icons, I would then have to select other remote users to

17  whom I want to give access to my personal page.

18      JUDGE TURNER:  Okay.

19      MR. CAHILL:  And that's not what de Hond does.

20      JUDGE TURNER:  Okay.

21      JUDGE LEE:  I might agree with you if the claim actually calls for

22  using the profile info to determine who gets access to the Personal Page.

23  But I don't seem to see it.  Can you just show me --

24      MR. CAHILL:  Well, the --

25

26

Appeal 2011-009264
Reexamination Control No. 90/010,792
Patent No. 4,481,273

1    JUDGE LEE:  -- where in this claim is the requirement that the profile

2    info is used to determine which users get access to the Personal Page?

3    MR. CAHILL:  Well, in Step D of Claim 10, you provide the

4    page-creating remote user with a means for accessing the profile information

5    of other remote users for selecting the other remote users to whom you wish

6    to grant access.

7    JUDGE LEE:  Step D?

8    MR. CAHILL:  Yes.

9    JUDGE LEE:  Are we reading the same claim?

10   MR. CAHILL:  Step D of Claim 10.

11   JUDGE TURNER:  Ten, I'm sorry.  That's where he's making a

12   reference to.

13   JUDGE LEE:  Okay.  Go ahead.  I'll follow what you're saying.

14   MR. CAHILL:  Okay.  So in Step D of Claim 10, you're providing the

15   page-creating remote user with a means for accessing the profile information

16   of other remote users for selecting other remote users to whom the

17   page-creating remote user may wish to allow access.

18   JUDGE LEE:  Okay.  That's in 10.  But same thing is not in the one?

19   MR. CAHILL:  It's not in one, but it is claims that depend from one.

20   It's in Claims 23 and 24.  And so, my point there would be profile

21   information accessible to other remote users can't be one thing in Claim 1

22   and something different in the claims that depend from it.

23   JUDGE TURNER:  Right.  But you haven't argued those claims.  I

24   mean, you've only argued the independent claims?

25   MR. CAHILL:  Yes, because --

26

Appeal 2011-009264
Reexamination Control No. 90/010,792
Patent No. 4,481,273

1    JUDGE TURNER:  And I find that logic's right so we don't have to

2    get into the particulars.  But now that you're arguing with us about these

3    dependent claims, I'm confused, because they haven't been briefed?

4    MR. CAHILL:  I'm not arguing that Claims 23 and 24 are separately

5    patentable over Claim 1.  My point is that you have to look at those claims

6    when you interpret Claim 1.

7    JUDGE TURNER:  Okay.

8    MR. CAHILL:  And so, the profile information that's accessible to

9    other remote users, it has to be that distinct thing that allows users in later

10   claims to access it for the purpose of selecting the other remote users to

11   whom they wish to grant access to the Personal Page.

12   JUDGE TURNER:  With respect to that claim, sure.  But it seems like

13   Claim 1 could be broader?

14   MR. CAHILL:  Claim 1 can be broader.  But profile information

15   accessible to other remote users isn't broader in one claim than the other.  It

16   is distinct.

17   JUDGE TURNER:  Right, but it may not be as restricted in 1 as it is

18   in 23?

19   MR. CAHILL:  It's still distinct from the Personal Page.

20   JUDGE TURNER:  And as I've said repeatedly that, I guess, there's a

21   distinction here, but maybe it's not worthwhile.  I would agree that the

22   profile information and the page are different things.

23   I mean, I think I would agree with the Examiner in terms of whether

24   you can access them both, and we can satisfy the claim.  And I understand

25   that you're saying that with respect to Claim 10, I have to have access to that

26

1   information before I can make that additional selection, and I understand

2   that.  But --

3       MR. CAHILL:  And de Hond doesn't work that way.

4       JUDGE TURNER:  I understand, but I --

5       JUDGE LEE:  Is that feature in 16, also?  I mean --

6       MR. CAHILL:  Yes, it is.

7       JUDGE LEE:  So it's only absent from Claim 1?

8       MR. CAHILL:  No.  It's a little different in different claims.  Claim 32

9   has a means for storing profile information relating to each remote user, the

10  profile information being accessible.  So that's a little different from either

11  one, because it --

12      JUDGE LEE:  No.  I'm only interested in your argument that the

13  profile info is used to determine who to select and have access to the

14  Personal Page?

15      MR. CAHILL:  In the independent claims, that language appears in

16  Claims 10 and 16.

17      JUDGE TURNER:  As I previously indicated, you are limited in time.

18  So I know you have several arguments in your brief, and certainly don't want

19  you to run out of time before you get any other salient argument

20      MR. CAHILL:  Okay.  Can we agree that the means for entering

21  security parameters are means-plus-function, at once?

22      JUDGE TURNER:  The Examiner certainly seems to agree with that.

23      MR. CAHILL:  Okay, it's --

24      JUDGE TURNER:  Is that a correct statement?  Would you concur, as

25  well?

26

Appeal 2011-009264
Reexamination Control No. 90/010,792
Patent No. 4,481,273

1    MR. CAHILL:  I think it is.  I think it is.

2    JUDGE TURNER:  Okay.

3    MR. CAHILL:  I mean, it took --

4    JUDGE TURNER:  It certainly seems to be the position that the

5    Examiner's now taking, in the Answer.  So unless we *de novo* review the

6    claims and say, no, I guess the means to and means for are all given

7    means-plus-function, 112-6th, the interpretation.

8    MR. CAHILL:  Okay.  And thank you.  Can we agree that this is a

9    computer-implemented invention, and that the structure that corresponds to

10   the means is the algorithm by which you program a computer to perform a

11   function?

12   JUDGE TURNER:  I would, in general.  But I guess, you also cited

13   *Aristocrat*.  Do you think you have enough structure to back up that

14   algorithm?  And I'm not really sort of going to 112 first or second,

15   because these are issued claims.

16   But you sort of cite *Aristocrat*.  Do you have enough sort of structure

17   there so that you can call this your algorithm, under *Aristocrat*?  I mean, this

18   is sort of -- I think this may not even rise to the level of an algorithm.  But I

19   guess you take a different view?

20   MR. CAHILL:  Well, I do.  And I've pointed out what I think the

21   algorithm is.  And the case law doesn't require complex algorithms.

22   JUDGE TURNER:  Right.

23   MR. CAHILL:  It just requires one or more steps that you program to.

24   In fact, there's one case that stands for the proposition that a single step is an

25   algorithm.  I haven't briefed that here, because it hasn't been an issue.

26

16

Appeal 2011-009264
Reexamination Control No. 90/010,792
Patent No. 4,481,273

1    JUDGE TURNER:  Right.  But I'm not sure that we have steps, in the

2    portion of column 10, that you're citing in terms of support for all of the

3    means-plus-function for this particular element, for the security parameters.

4    I'm not sure that there are steps that are recited there.

5        So I understand that you're saying the structure's the algorithm.  But

6    do you have enough support for that algorithm, I guess, is the question?

7    And you would, apparently, say, yes.  You think that there's sufficient

8    disclosure there of what this is supposed to do to provide those steps?

9        MR. CAHILL:  Yes.  And this is a particular bone of contention

10   between the Patentee and the Office.  The language in column 10, and this

11   relates to the security attributes table, which is where you find the security

12   attributes that appear in the claims, discusses this function of giving

13   permission to other users to view the remote user's Personal Page.  And it

14   says "to accomplish this, the remote user may be prompted for the name of

15   the user to whom the remote user wishes to give permission".  That's

16   significant, because it specifies individual access, which I think is another

17   key to this invention, and something that was very important to the

18   Inventors.

19       JUDGE TURNER:  Now, the Examiner talks about that and takes that

20   "may" and says that that makes it conditional.  And I understand from your

21   reply brief, you don't agree with that.  But why, if you're sort of citing all

22   this section to Claim 10, where it says, "to accomplish this, the remote user

23   may be prompted for the name of the user to whom the remote user wishes

24   to give permission", why doesn't that say that in these two embodiments that

25

26

Appeal 2011-009264
Reexamination Control No. 90/010,792
Patent No. 4,481,273

1   are disclosed in that column, to those specific embodiments, why doesn't

2   that make it optional that I have to specifically provide user information?

3        MR. CAHILL:  Well, for 112-6 purposes, it doesn't matter whether it's

4   optional or not.  It matters whether it performs the function.  And I've cited

5   one case in the brief for that proposition that it specifically talks about an

6   optional timer in the specification.

7        JUDGE TURNER:  Right, but that --

8        MR. CAHILL:  And that is the structure that corresponds.

9        JUDGE TURNER:  But in order for that claim to read on that

10  particular embodiment, the timer had to be there.  It's not like the timer

11  wasn't there or not.

12       In order for that claim to have support, the timer had to be there.  So

13  yes, the timer was optional in that case.  But in this case, I mean, I think

14  we're talking about something different.

15       Here, there's a condition here which I understand your argument

16  seems to be that if I look at the totally of what's described here, that it's clear

17  that I do have to provide that ID.  But also have this sense here that it says

18  that the user may be prompted.  So it seems like that's far more conditional,

19  that the algorithm may require me to do it, or may accomplish it through

20  some other means.

21       MR. CAHILL:  Well, to input a security attribute, there has to be a

22  security attribute.  And the security attribute in this case, I mean, the security

23  attribute table includes permission attributes consisting of the name of the

24  remote user wishing to give permission, and the user to whom permission is

25  given.  That is the security attribute.

26

Appeal 2011-009264
Reexamination Control No. 90/010,792
Patent No. 4,481,273

1    You can't get there until you get the name of the person to whom the

2    page-creating remote user wishes to give access.  So if you don't prompt for

3    the name, and then link the two names together, you don't have the security

4    attribute.  And the function is inputting the security attribute.  There's no

5    other way to perform the function.

6        JUDGE TURNER:  Right.  But I guess, to sort of broaden my

7    question a little bit, that I may be prompted, what if I decide that, okay, I

8    want everybody to look at my profile, everyone who can look at Jamie's

9    profile.

10       So I'm somehow saying that everybody who can look at Jamie's

11   profile can look at my profile.  I haven't necessarily provided any name,

12   perhaps, other than giving Jamie's name.  Jamie may already be on my

13   permission list.

14       But I mean, the suggestion is that maybe this permission is actually

15   broader than just simply the two embodiments that are disclosed there.  And

16   this may certainly suggest that maybe there are other algorithms, other than

17   these two specific embodiments, that the means-plus-function would read

18   upon, would therefore rely on?

19       MR. CAHILL:  Well, the structure that corresponds to a means is not

20   conceivable structure that's not described.  It's only the structure that's

21   described.

22       JUDGE TURNER:  Right.

23       MR. CAHILL:  So this is the only way to do it, that's described in this

24   patent.

25

26

19

Appeal 2011-009264
Reexamination Control No. 90/010,792
Patent No. 4,481,273

1    JUDGE TURNER:  But it also seems like it says that it may be

2    prompted.  So that seems to describe an alternative.  So it seems that I

3    don't --

4    MR. CAHILL:  But --

5    JUDGE TURNER:  That if I'm not prompted, that also would work,

6    perhaps?

7    MR. CAHILL:  If you weren't prompted, where is the description of

8    how the security attribute is input?  It isn't --

9    JUDGE TURNER:  Well, I don't have disclosure there.  But I mean, I

10   guess --

11   MR. CAHILL:  Right.  It isn't in there.

12   JUDGE TURNER:  Okay.

13   MR. CAHILL:  There is a way to perform that function of giving

14   permissions.

15   JUDGE TURNER:  Okay.

16   MR. CAHILL:  And it's the only way that's described.  If you want to

17   give permission, then you may do it.  If you don't want to give permission,

18   then you don't have to do it.  And that is exactly like the optional timer case.

19   If you want to perform the function, you include the optional timer.

20   JUDGE TURNER:  Okay.

21   MR. CAHILL:  And if you don't want to perform the function, you

22   don't include the optional timer.

23   JUDGE TURNER:  Okay.  So Claim 1 would only read on the

24   subsequent two embodiments there.  That would be sort of the analogue to

25   the timer case.  So you're saying Claim 1 wouldn't read, on this conditional

26

20

Appeal 2011-009264
Reexamination Control No. 90/010,792
Patent No. 4,481,273

1  statement here, would only read on the other two embodiments, because

2  that's what's required in all of the claims?

3      MR. CAHILL:  I'm not sure I followed that all the way through.  I'm

4  sorry.

5      JUDGE TURNER:  No, that's all right.  I tend to be confusing.  So

6  what you're sort of -- if I take the analogue case, where we're talking about

7  the timer, okay, what you're sort of suggesting to me, and maybe not, maybe

8  I'm suggesting it to me, of which you case you can agree or disagree, that

9  we're not reading this as a conditional, and that this claim, in order to be

10  some support, it has to have one of the two embodiments that are disclosed

11  in that column?

12     MR. CAHILL:  It does have to have one of the two embodiments

13  disclosed in that column.  I mean, another way to read the "may" could be if

14  you choose the first embodiment, you may do it that way.

15     JUDGE TURNER:  Okay.

16     MR. CAHILL:  Or you may choose the alternative embodiment.  But

17  that's all there is.

18     JUDGE TURNER:  Okay.

19     MR. CAHILL:  It's one embodiment or the other.  That's what

20  performs the function that's recited in the claims.  So that's got to be what the

21  structure is.

22     JUDGE TURNER:  Okay.  And the Examiner also makes arguments

23  about the fact that the function here, you're sort of saying that this is very

24  specific.  But he's sort of saying, well, it has to be specific to the function

25

26

Appeal 2011-009264
Reexamination Control No. 90/010,792
Patent No. 4,481,273

1   that's recited in the means-plus-function?  And I understand you feel like

2   he's sort of shifting.

3          But I mean, obviously, if this said something in the middle that wasn't

4   related to the function, it wouldn't be part and parcel of that, would that?  If

5   it said, by the way, if you pick the person, go do something else and then

6   come back and insert it, you wouldn't say that other step would be

7   intrinsically involved, because if it's not involved in the function, maybe you

8   take the opposite?

9          MR. CAHILL:  No.  I actually agree with that.  And there's a

10   paragraph in here, in the middle, in between these two embodiments that

11   talks about how the security attributes table may also store other information

12   that doesn't relate to the granting of permission.

13          JUDGE TURNER:  Okay.

14          MR. CAHILL:  That's not included.

15          JUDGE TURNER:  Okay.

16          MR. CAHILL:  I think the case law is pretty clear.  You include the

17   structure that actually performs the function.

18          JUDGE TURNER:  Okay.

19          MR. CAHILL:  I think that's what the case law says, and I've cited

20   much too much of it in the appeal brief.  But I think it's clear on that point.

21   And so, the structure that's described here that does perform the function,

22   that's the structure that corresponds, and it's one embodiment or the other.

23          JUDGE TURNER:  So does the Examiner have the function wrong?

24   Or the Examiner's not looking at the specific-enough embodiment?

25

26

Appeal 2011-009264
Reexamination Control No. 90/010,792
Patent No. 4,481,273

1      MR. CAHILL:  Well, the Examiner is doing two things that I disagree

2   with.

3      JUDGE TURNER:  Okay.

4      MR. CAHILL:  One is he's saying it's a webpage that allows you to

5   give permission.  Well, the plain language all says means for inputting

6   security parameters.  The primary function that has to be performed is the

7   inputting of security parameters.  He leaves that out.  He doesn't even

8   mention security parameters in his proposed claim construction.

9      The second thing is, his argument for why the structure cannot include

10  a name is because he says, well, the function doesn't require a name.  But

11  that's not how you do a means-plus-function analysis.

12     You look at the function and you go to the specification and you look

13  for the embodiments that perform that function.  And that structure that you

14  find there, whatever it is that you find there, that's what the claim reads on.

15  The Examiner says it can't be names because the claim doesn't say names.

16  That's not how you do the analysis.

17     JUDGE TURNER:  Okay.

18     MR. CAHILL:  The third and final point that was raised on appeal, I

19  don't think I have very much to say about it.  It's the issue of whether de

20  Hond presents users with a plurality of page templates.

21     JUDGE TURNER:  Okay.

22     MR. CAHILL:  I'm convinced that it does.  Examiner Escalante is

23  equally convinced that it does.  I think the papers are fairly clear on this.

24  But what Examiner Escalante is saying is a page template appears to be,

25  well, the information that users input.

26

Appeal 2011-009264
Reexamination Control No. 90/010,792
Patent No. 4,481,273

1    He points to one page and he says, well, different users will put

2    different things in it, different kinds of information, and, therefore, they're

3    different page templates.

4        A, I don't think that's true and, B, I don't think that meets the claim

5    recitation, which is providing a page-creating remote user with a plurality of

6    page templates to make a selection.

7        JUDGE TURNER:  So would Figure 8 of de Hond, and you may not

8    have it in front of you, but Figure 8 of de Hond, would that, or would that

9    not, be a page template?

10       MR. CAHILL:  Figure --

11       JUDGE TURNER:  I think this is sort of the argument the Examiner

12   makes, but -

13       MR. CAHILL:  8 of de Hond.

14       JUDGE TURNER:  Figure 8, which is sheet 8 of --

15       MR. CAHILL:  I think that Figure 8 is not a page template because

16   this isn't what you see when you look at the page.  This is a data-entry page.

17       JUDGE TURNER:  Okay.  Right.  But the template goes to what the

18   page is going to look like.  And it seems like, depending on what

19   information I enter here or don't enter here, that's going to affect what the

20   page looks like?

21       MR. CAHILL:  That's not what --

22       JUDGE TURNER:  And therefore, depending on what icon I give

23   here, I have multiple "templates" which I think is sort of the position the

24   Examiner's taking?

25       MR. CAHILL:  I don't think that's what de Hond says.

26

24

Appeal 2011-009264
Reexamination Control No. 90/010,792
Patent No. 4,481,273

1        JUDGE TURNER:  Okay.

2        MR. CAHILL:  de Hond allows you to select an icon, enter a slogan,

3    hence the text for your homepage, and enter your interests.

4        JUDGE TURNER:  Okay.

5        MR. CAHILL:  And that's it.  They go in your house.

6        JUDGE TURNER:  But it seems like if I don't put certain things in

7    there, that's going to affect what the page looks like.  So I don't see how this

8    isn't a page template?

9        MR. CAHILL:  That's not what de Hond says.

10       JUDGE TURNER:  Okay.

11       MR. CAHILL:  It doesn't say that.  I mean, you can go through and

12   click off, right?  On the next page, sheet 9 of 16, there's a list of interests that

13   you might check off.  And then, on page 10, you see the actual page.  Now,

14   whether some of these things are missing, are longer lists, certainly depends

15   on what you input.  But the template of the page doesn't change.  The lists

16   are the lists.  They might be longer.  They might be shorter.

17       The user isn't selecting different page templates that give different

18   layouts to the information, at least de Hond doesn't say that.  And it doesn't

19   show that here is this language about floor plans.  De Hond says that there

20   can be different floor plans.

21       JUDGE TURNER:  Because I don't remember, you may have said it

22   in your brief, do you have a definition for "template" that comes out of the

23   specification, like under *Phillips*, that you can point to right away?

24       MR. CAHILL:  Yes.  It is in the brief.  It's probably easier for me to

25   find in the Personal Page patent, in column 8, line 47.  It says, "Referring

26

Appeal 2011-009264
Reexamination Control No. 90/010,792
Patent No. 4,481,273

1   briefly to Figure A, an exemplary template 188 is shown.  A template is a

2   worldwide web style page design, which includes graphics and page layout

3   information."  That is my --

4        JUDGE TURNER:  So, again, what de Hond chose doesn't comport

5   with that, you're saying?

6        MR. CAHILL:  De Hond shows one.  De Hond doesn't show a

7   plurality of page templates that a user can select between.

8        JUDGE TURNER:  But if I have different icons, you're saying that

9   those would all be the same template?

10       MR. CAHILL:  Yes.

11       JUDGE TURNER:  Okay.

12       MR. CAHILL:  You just choose to put a different graphic in the

13   template.

14       JUDGE TURNER:  Okay.

15       MR. CAHILL:  I mean, the layout is the layout.

16       JUDGE TURNER:  Okay.

17       MR. CAHILL:  Okay?  That's all I have.

18       JUDGE TURNER:  Before you go, I did have one question?

19       MR. CAHILL:  Yes.

20       JUDGE TURNER:  There was a notification concurrent litigation

21   proceedings that was filed?

22       MR. CAHILL:  Yes.

23       JUDGE TURNER:  Did you get a copy of that?

24       MR. CAHILL:  I did get a copy of that.

25

26

Appeal 2011-009264
Reexamination Control No. 90/010,792
Patent No. 4,481,273

1     JUDGE TURNER:  Okay.  Is there anything there that we should

2   review that you think is relevant or pertinent in that information, that since

3   you received a copy of it, that you'd want to volunteer for us?

4     MR. CAHILL:  Well, it's not a notification of a concurrent

5   proceeding.  It's not a notification of a decision.  It's a transcript of an

6   evidentiary hearing.

7     JUDGE TURNER:  Okay.

8     MR. CAHILL:  I don't understand how it's relevant to this.

9     JUDGE TURNER:  Okay.

10     MR. CAHILL:  I believe the Requestor thinks it's relevant to this.

11     JUDGE TURNER:  Right.

12     MR. CAHILL:  And I'm not going to tell you what to read and what

13   not to read.

14     JUDGE TURNER:  I'm just asking, is there anything that you would

15   particularly want to point out, since you had evidence?  I don't know that

16   we're going to look at it, in particular, because this is coming from a

17   third-party requestor.  But since you have seen it, I assumed, is there

18   anything you'd like to particularly point out?  Please let us know?

19     MR. CAHILL:  There is not.

20     JUDGE TURNER:  Okay.  Asked and answered.

21     MR. CAHILL:  Okay.

22     JUDGE TURNER:  Okay.

23     MR. CAHILL:  Thank you.

24     JUDGE TURNER:  Thank you.

25     (Whereupon, the proceedings, at 3:15 p.m., were concluded.)

26

Appeal 2011-009264
Reexamination Control No. 90/010,792
Patent No. 4,481,273

1

2    cc:

3

4    Patent Owner

5    Nutter, McClennen & Fish LLP
     Seaport West
6    155 Seaport Boulevard
7    Boston, Massachusetts 02210-2604

8

9
     Third Party Requestor:
10

11   Cooley, Goodwin, Kronish LLP
     Attn: Patent Group
12   777- 6th Street, NW
     Suite 1100
13   Washington, DC 20001

14

15

16

17

18

19

20

21

22

23

24

25

26