UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | ) | |
|---|---|---|
| TELE-PUBLISHING, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 09-11686-DPW |
| | ) | |
| FACEBOOK, INC. and | ) | |
| THEFACEBOOK, LLC, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**PLAINTIFF TELE-PUBLISHING, INC.'S RESPONSE TO
FACEBOOK'S SUPPLEMENTAL CLAIM CONSTRUCTION BRIEF**

The primary purpose of Facebooks' supplemental *Markman* brief is to impute to TPI arguments that it never made, then to argue that TPI cannot take a position contrary to those imagined arguments. Since TPI has made the same arguments during prosecution, during reexamination, and in this Court, Facebook's supplemental briefing is wasted breath. The reexamination proceedings and the BPAI's decision merely confirm TPI's constructions.[1]

**I.    NEITHER THE BPAI DECISION NOR TPI'S ARGUMENTS DURING REEXAMINATION CHANGED THE SCOPE OF THE TEMPLATES CLAIMS.**

Contrary to Facebook's suggestion, TPI never argued to the PTO or to this Court that prompting a page-creating user with a plurality of page templates "includes customizing an existing personal page with a user's entry or selection of information."  [FB Supp. Br. at 2.][2] The parties stipulated to the meaning of templates—a World Wide Web style page design which includes graphics and page layout information—and the BPAI adopted that same definition.

---

[1] The reexamination proceeding are now complete.  On July 10, 2012, the PTO issued an *ex parte* reexamination certificate for the patent-in-suit.

[2] TPI has proffered one construction for "providing/prompting. . . with a plurality of page templates;" it directed the Court to its constructions for "prompt," "plurality," "page," and "template."

In its supplemental briefing, however, Facebook provides a *fourth* construction for "prompting/providing . . . with a plurality of page templates":

| Facebook's 9/1/10 Construction | Facebook's 11/3/10 Construction | Facebook's 11/4/10 Construction | Facebook's 6/22/12 Construction |
|---|---|---|---|
| requiring the page-creating remote user to make a selection from a plurality of page templates before proceeding to the next step of page-creation | no construction needed | requiring the page-creating remote user to make a selection from a plurality of page templates (and preceding the steps of contributing text and contributing graphics to customize the page template) | requiring a page-creating user to choose a page template from two or more different page templates, each page template specifying one or more categories of information for placement on the personal page and the location of the categories on the personal page (and preceding the steps of contributing text and contributing graphics to customize the page template).  Excluded from the scope is customizing of a personal page from a user's entry or selection of information (other than a template). |

Facebook's latest construction reflects the same flaws as its previous ones. Not only does the proposed construction contort the plain meaning of "prompting" into a requirement that items actually be entered,[3] it inappropriately imposes an order to the sequence of the claimed steps. Both the specification and the law prohibit this imposition. *See* '216 patent at col. 8, lines 23-33 ("It will be appreciated by a person of ordinary skill in the art that the method . . . may be presented to a remote user 10 in other formats without departing from the spirit of the invention described herein."); *see, e.g.*, *Altris, Inc. v. Symantec Corp.*, 318 F.3d 1363, 1369-71 (Fed. Cir. 2003) (refusing to import a sequence based on a description of the preferred embodiment).[4]

## II. THE SECURITY PARAMETERS INCLUDE BOTH NAME OR USER ID AND ARE DEFINITE.

The security parameters include the name or user ID of the page-creating remote user and the name or user ID of the remote user to whom the page-creating remote user wishes to give

---

[3] *See* TPI's Opening Claim Construction Brief at 32-34 (Dkt. No. 193).

[4] In addition, claims 29 and 32 do not include templates.  Facebook acknowledges in a footnote that the BPAI is silent on this issue.  That silence is telling.  *See* TPI's Supplemental Claim Construction Brief at 5-6 (Dkt. No. 279).

access. The specification expressly defines the security parameter as:

> consisting of the name of the remote user (User ID 202) wishing to give permission and the user to whom permission is given (Viewer ID 204).

'216 patent at col. 10, lines 23-25. Facebook directs the Court to a single sentence from the BPAI transcript to argue that TPI "disclaimed" any construction that is broader than the given name of the user. But TPI was neither discussing what components make up the security parameters, nor attempting to overcome any prior art in its argument to the Board. A single sentence taken out of context cannot amount to disavowal of claim scope. *See, e.g.*, *Vanguard Prods. Corp. v. Parker Hannifin Corp.*, 234 F.3d 1370, 1372 (Fed. Cir. 2001) (refusing to narrow scope of claim where inventors had not "expressly disclaimed" subject matter).[5]

Facebook also continues to press its narrow definition of claimed function so that it can ignore the corresponding structure found in the specification.[6] As this Court aptly noted at the *Markman* hearing, Facebook appears to be "restricting function pretty dramatically." 2/7/11 Tr. at 97 (Dkt. No. 232). By restricting function in this way, Facebook creates a false premise; it asserts that the function relates to the page-creating user, himself, entering each component of the security parameter (his own user ID *and* that user ID of the person to whom he wishes to give personal page access). As TPI has already established, such an overly mechanistic interpretation of the claim language improperly disregards the overall context of the patent.[7] Accordingly, both Facebook's false premise and the reasoning that follows from it must be rejected.

---

[5] During the February 2011 *Markman* hearing, Facebook also sought to limit the definition of security parameters to the characters actually entered by the page-creating remote user to identify himself to the system. Facebook's counsel asserted that the "security parameter" must be "what the user inputs." 2/17/11 Tr. at 81 (Dkt. No. 232.) There is, however, no basis in the claims, the specification, or the prosecution file history to so narrowly define the term "security parameter."

[6] Facebook suggests that the BPAI would have held the patent-in-suit indefinite, but was unable to because of the scope of the Board's authority. That suggestion is misleading. In a recent decision, the BPAI found claims of a patent indefinite under 35 U.S.C. § 112, ¶ 6, and directed the patentee to file an amendment or reissue application. A copy of the decision in *Google, Inc. v. Function Media, L.L.C.* (Appeal 2011-010724) is attached as Ex. 22 to the Third Supplemental Declaration of Heather B. Repicky, filed herewith.

[7] *See* TPI's Opening Claim Construction Brief at 7-10 (Dkt. No.193) and its Reply Brief at 2-9 (Dkt. No. 200).

3

**III.     THE MEANS FOR ACCESSING/SELECTING ELEMENTS ARE DEFINITE.**

The patent-in-suit discloses sufficient algorithmic structure corresponding to the means for accessing/selecting profile information.  The claimed function of these elements is simple: providing information to enable the page-creating remote user to select to whom he may wish to grant access to his personal page.[8]  The specification describes how the system presents profile information to the page-creating remote user to make that selection—either by displaying it for browsing or by searching it.[9]  Facebook, itself, admits that the specification deals with "the ability of users to locate other people through the Personal On-line Network (PON)." [FB Opening Br. at 15.]  Facebook further admits that the specification discloses a "searching facility." [FB Opening Br. at 16.]  Knowing what the specification includes, Facebook now redefines the claimed function to justify its disregard for the corresponding structure actually disclosed.  Facebook attempts to interject a *second* function in the accessing/selecting elements to apply the otherwise inapposite Federal Circuit holding in *Noah Sys., Inc. v. Intuit Inc.*, 675 F.3d 1302, 1313 (Fed. Cir. 2012).

In *Noah*, the Federal Circuit held the patent at issue indefinite for having no structure where the disclosed algorithm supported only one of two claimed functions.  675 F.3d at 1318.  Since the claims of the patent-in-suit claim only one function, *Noah* is inapplicable.  To avoid that fact, Facebook now argues that claims 10, 16, 29, and 32 require two functions—accessing *and* selecting.  Reflecting the difficulties with this novel assertion, Facebook failed to explain in its most recent brief how those allegedly different functions in fact differ.  Instead, more than a year after the initial *Markman* hearing, Facebook simply declares that those four claims each

---

[8] In Facebook's own words, these means are "for the purpose of selecting users to allow access to the page-creating remote user's personal page." [FB Opening Br. at 15.]

[9] *See* TPI's Opening Claim Construction Brief at 22-24 (Dkt. No. 193) and its Reply Brief at 9-11 (Dkt, No. 200).

4

claim two distinct functions.[10]  The claims themselves, however, undercut Facebook's new argument.  [See Annex A.]  Claims 10 and 16 include both the words "access[ing]" and "selecting" whereas claims 29 and 32 employ only the words "to select."  Just as it cannot explain what the supposedly different functions are, so Facebook cannot explain how the use of a single verb in the latter two claims could somehow involve claiming two distinct functions.  In any event, defining claimed function is not simply an exercise of identifying verbs and gerunds.  *See Baran v. Med. Device Techs., Inc.*, 616 F.3d 1309, 1317 (Fed. Cir. 2010) (construing function based on context of the patent-in-suit).

Facebook's new, unsupported two-function argument is fundamental to its indefiniteness analysis.  Without imputing two claimed functions, Facebook could not apply *Noah* and ignore the Federal Circuit's directive that this Court determine "whether the disclosed algorithm, from the viewpoint of a person of ordinary skill, is sufficient to define the structure and make the bounds of the claim understandable."  *Noah Sys., Inc. v. Intuit Inc.*, 675 F.3d 1302, 1313 (Fed. Cir. 2012); *see also Aerotel, Ltd. v. Telco Group, Inc.*, 433 Fed. Appx. 903, 918-20 (Fed. Cir. 2011) (reversing district court's claim construction because of alleged infringer's failure to "meet its burden to show by clear and convincing evidence that a person of ordinary skill in the art would be unable to identify the disclosed structure").  Once the knowledge of one skilled in the art is invoked, there can be no dispute that the patent-in-suit is definite under 35 U.S.C. § 112, ¶ 6.[11]  Facebook's application of *Noah* is nothing more than an eleventh-hour attempt to fit a square peg into a round hole.

---

[10] Any attempt to define these two alleged functions—accessing and selecting—would reveal the absurdity of Facebook's argument.  For example, with respect to "selecting," it is unclear whether Facebook suggests that the corresponding structure it seeks to find in the specification is an algorithm for *the system* to select to whom the page-creating remote user provides access.  Or maybe Facebook looks for an algorithm that covers the thought process of the page-creating remote user in terms of his selection.  Obviously neither of these two arguments is supportable.

[11] *See* Declaration of Latanya Sweeney, Ph.D. at ¶¶ 27-34 (Dkt. No. 202).

5

TELE-PUBLISHING, INC.,

By its attorneys,

/s/ Heather B. Repicky
Daniel J. Gleason (BBO# 194900)
Joseph F. Shea (BBO# 555473)
Heather B. Repicky (BBO# 663347)
Rory P. Pheiffer (BBO: 664950)
Shane P. Early (BBO# 673541)
NUTTER MCCLENNEN & FISH LLP
Seaport West
155 Seaport Boulevard
Boston, MA 02210
(617) 439-2000

Dated: July 13, 2012

## CERTIFICATE OF SERVICE

    I hereby certify that a copy of the foregoing document was filed through the electronic filing system and served electronically to the registered participants as identified on the Notice of Electronic Filing.

/s/ Heather B. Repicky

# ANNEX A

| | |
|---|---|
| 10. d) providing the page-creating remote user with a means *for accessing* the profile information of other remote users *for selecting* other remote users to whom the page-creating remote user may wish to allow access to the personal page; | 16. e) means for the page-creating remote user *to access* the profile information of other remote users *for selecting* other remote users to whom the page-creating user may wish to allow access to the personal page; |
| 29.d) provide the page-creating remote user with means *to select* other remote users to whom the page-creating remote user may wish to allow access to the personal page; | 32. d) means for allowing the page-creating remote user *to select* other remote users to whom the page-creating remote user may wish to allow access to the personal page; |

2121178.4