UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| TELE-PUBLISHING, INC., ) | |
| ) | |
|     Plaintiff, ) | |
| ) | CIVIL ACTION NO. |
|   v. ) | 09-11686-DPW |
| ) | |
| FACEBOOK, INC., and ) | |
| THEFACEBOOK, LLC, ) | |
| ) | |
|     Defendants. ) | |

MEMORANDUM AND ORDER
December 1, 2016

Plaintiff Tele-Publishing Inc. ("TPI") has requested that I reconsider the holding I made in my September 7, 2016 Memorandum and Order ("*Markman* Order") that claims 31 and 34 of United States Patent No. 6,253,216 are invalid as indefinite. *Tele-Publishing, Inc.* v. *Facebook, Inc.*, No. CV 09-11686-DPW, 2016 WL 4697336, at *11 (D. Mass. Sept. 7, 2016). I there found claims 31 and 34 indefinite because they were "not tied to a disclosed algorithm" and therefore lacked a corresponding structure. *Id.* TPI argues that the *Markman* Order failed to address the proper corresponding structure for claims 31 and 34 and failed to consider evidence that a person of ordinary skill in the art would sufficiently understand the proposed structure. Defendants Facebook, Inc. and TheFacebook, LLC, (collectively "Facebook") respond that reconsideration is not necessary

because TPI still cannot identify a sufficient corresponding structure for claims 31 and 34.

I see no need to disturb my earlier finding that claims 31 and 34 are indefinite.  Even under its new proposed construction of "means for searching" in claims 31 and 34, TPI has not addressed the fundamental problem I identified in my earlier order: claims 31 and 34 are "not tied to a disclosed algorithm." *Tele-Publishing, Inc.*, 2016 WL 4697336, at *11.[1]

---

[1] TPI and Facebook also dispute whether my finding that independent claims 29 and 32 are indefinite automatically makes dependent claims 31 and 34 indefinite, since those claims depend upon claims 29 and 32.  The Federal Circuit does not appear to have resolved the question whether a dependent claim is necessarily indefinite if it depends on an independent claim that is separately found indefinite.  *Compare Ibormeith IP, LLC v. Mercedes-Benz USA, LLC*, 732 F.3d 1376, 1378 (Fed. Cir. 2013) (noting, in passing, that if an independent claim was indefinite, two dependent claims "would also be invalid, because they incorporate the elements of [the] independent claim"); *Nat'l Recovery Techs., Inc. v. Magnetic Separation Sys., Inc.*, 166 F.3d 1190, 1198 (Fed. Cir. 1999) (finding two dependent claims to "stand or fall with [the] independent claim") *with Default Proof Credit Card Sys., Inc. v. Home Depot U.S.A., Inc.*, 412 F.3d 1291, 1297, 1303 (Fed. Cir. 2005) (observing that the district court held the independent claim "invalid for indefiniteness, yet declined to hold [the] dependent claims . . . invalid for the same reason" and noting that the defendants had failed to appeal that finding); *Honeywell Int'l Inc. v. Hamilton Sundstrand Corp.*, 370 F.3d 1131, 1148-49 (Fed. Cir. 2004) ("Each claim defines a separate invention, whether or not written in independent form; and its validity stands or falls separately . . . ."); *see also Verint Sys., Inc. v. Red Box Recorders Ltd.*, 166 F. Supp. 3d 364, 381 n. 86 (S.D.N.Y. 2016) (stating "dependent claims may still be valid despite a finding that the independent claim is indefinite" but holding dependent claims at issue indefinite because they relied on same indefinite structure as independent claim).  Because I find claims 31 and 34 fail to disclose a sufficient corresponding

In the *Markman* Order, I explained that "[w]hen 'mean-plus-function' analysis involves claim elements implemented by computers and microprocessors, the Federal Circuit has required that a specific algorithm for such implementation be disclosed." *Tele-Publishing, Inc.*, 2016 WL 4697336, at *3. "The algorithm structure need not be extensive . . . [but] it nevertheless must actually be described in the specification." *Id.* at *4. Although the term "algorithm" appears to signify something highly technical, the Federal Circuit has defined it simply as "in essence a series of instructions for the computer to follow." *Typhoon Touch Techs., Inc.* v. *Dell, Inc.*, 659 F.3d 1376, 1384 (Fed. Cir. 2011). "Precedent and practice permit a patentee to express that procedural algorithm 'in any understandable terms including as a mathematical formula, in prose, or as a flow chart, or in any other manner that provides sufficient structure.'" *Id.* at 1385 (quoting *Finisar Corp.* v. *DirecTV Grp., Inc.*, 523 F.3d 1323, 1340 (Fed. Cir. 2008)). All an algorithm must do is provide the steps taken to perform the claimed function. *Id.*

TPI's new proposed structure, raised in response to the *Markman* Order, does not explain, in either lay or technical terms, the steps taken to perform the claimed function of

---

structure regardless of their dependency on claims 29 and 32, I do not address this broader unsettled legal question.

searching.  TPI's proposed structure for the "means for searching" function in claims 31 and 34 is "a CGI program which accesses a database on the local computer network for querying profile information."  Read most generously, this attempt at an algorithm would have two steps: 1) accessing a database on the local computer network and 2) querying profile information.  But "querying," without further explanation, is merely another way of stating the function of "searching."  Such a circular definition, using the function to explain the process, cannot qualify as an algorithm.  *See Augme Techs., Inc.* v. *Yahoo! Inc.*, 755 F.3d 1326, 1338 (Fed. Cir. 2014) ("Simply disclosing a black box that performs the recited function is not a sufficient explanation of the algorithm required to render the means-plus-function term definite."); *see also Triton Tech of Tex., LLC* v. *Nintendo of Am., Inc.*, 753 F.3d 1375, 1379 (Fed. Cir. 2014) (finding claim indefinite when the proposed algorithm was "hardly more than a restatement of the . . . function itself").

Nor do TPI's citations to the specification illuminate the structure supporting claims 31 and 34.  TPI first cites to the specification's discussion of "searching facilities" at col. 7, 9-18.  In the *Markman* Order, I found col. 7, 9-18 failed to "adequately describe the structure of the claimed function" for both the independent claims and, by implication, claims 31 and 34.  *Tele-Publishing, Inc.*, 2016 WL 4697336, at *10, *11.  I

4

continue to find this to be true despite TPI's effort to recalibrate the description.  The specification's discussion at col. 7, 9-18 does not describe how searching is performed; it merely describes the function of searching, stating that searching facilities would "allow users of the system to search other users' profiles in an attempt to find a match."  Even if, as TPI argues, this description is more pertinent to the functions of the narrower claims 31 and 34 than it was to the broader independent claims I found indefinite in the *Markman* Order, col. 7, 9-18 still does not explain how searching occurs.

    The specification's discussion at col. 7, 9-18 does, to be sure, link searching to the CGI program, and through that link, TPI attempts to ground the structure underlying claims 31 and 34 in a part of the specification that I found supported the structure of claim 32(f).  Claim 32(f) recites "a system for providing a personal page comprising: . . . (f) means for storing the security parameters in one or more databases." *Tele-Publishing, Inc.*, 2016 WL 4697336, at *8.  For that claim, I found the structure to be "a CGI program that accesses a database on the local computer network for storing permission attributes" and found the source of that structure to be "reflected in the specification at col. 10 11.23-27 and the description of the CGI program at col. 6 1.46-col. 7, 1.8." *Id.* at *10.

5

TPI argues I should likewise look to "the description of the CGI program at col. 6 1.46-col. 7, 1.8" as the source of the structure for claims 31 and 34.  [Dkt. No. 318, 13-14].  As I noted in the *Markman* Order, however, the description of the CGI program at col. 6 1.46-col 7., 1.8 does not alone provide an algorithm.  Much of the discussion of claim 32(f) in the Markman Order centered on whether I would include the term "CGI program" as a part of claim 32(f)'s structure.  I concluded that "[b]ecause the CGI program is specifically called out in the specification, I find no basis for de-linking it *from the algorithm*." (emphasis added).  *Tele-Publishing, Inc.*, 2016 WL 4697336, at *10.  I therefore found that the algorithm for claim 32(f) was "reflected in the specification at col. 10 11. 23-27," that the algorithm included the term "CGI program" because that term was used in col. 10 11. 23-27, and that the definition of "CGI program" would come from "the description of the CGI program at col. 6. 1. 46-col. 7. 1.8." *Id.*

For claims 31 and 34, however, there is no algorithm upon which to apply the description of the CGI program at col. 6. 1. 46-col. 7. 1.8.  As I explained above, the specification's discussion of "searching facilities" at col. 7, 9-18 fails to provide the necessary step-by-step explanation of how searching occurs.  Without an underlying algorithm, col. 6.1 46-col.

6

7.1.8's gloss on the term "CGI program" cannot itself provide a structure for claims 31 and 34.[2]

Finally, it is not enough, as TPI claims, that a person of ordinary skill in the art would know how to enable a user to search profile information. TPI's specification discloses no algorithm for claims 31 and 34, and the Federal Circuit has made clear that "[w]here the specification discloses no algorithm, the skilled artisan's knowledge is irrelevant." *EON Corp. IP Holdings LLC* v. *AT&T Mobility LLC*, 785 F.3d 616, 624 (Fed. Cir. 2015). If there is no algorithm to evaluate, I cannot reach the issue of whether a person of ordinary skill in the art would know how to enable the function of claims 31 and 34. *Id.; see*

---

[2] I also note that claim 32(f) may fall within a narrow category of means-plus-function claims where the structure does not need to be rooted in an algorithm. The Federal Circuit has held that if a claimed function "can be achieved by any general purpose computer without special programming," then the structure supporting the function can simply be a general purpose computer without an algorithm. In re *Katz Interactive Call Processing Patent Litig.*, 639 F.3d 1303, 1316 (Fed. Cir. 2011). But, if a specific function "would need to be implemented by programming a general purpose computer to convert it into a special purpose computer capable of performing those specified functions," then the function must be linked to a specific algorithm. *Id.* There are functions that a general purpose computer can perform without special programming, and they do include the basic functions of "'processing,' 'receiving,' and '*storing*.'" *Id.* (emphasis added). Because claim 32(f) addressed solely a means of "storing," the general description of a CGI program could be said to suffice as an underlying structure. In contrast, claims 31 and 34, which deal with the specific function of searching that would require additional programming to be performed, fall outside this narrow category and must be linked to an algorithm to have an adequate structure.

7

*also Blackboard, Inc.* v. *Desire2Learn, Inc.*, 574 F.3d 1371, 1385 (Fed. Cir. 2009) ("A patentee cannot avoid providing specificity as to structure simply because someone of ordinary skill in the art would be able to devise a means to perform the claimed function.").

    For these reasons, I deny TPI's motion [#317] for reconsideration.

                                  */s/ Douglas P. Woodlock*
                                  DOUGLAS P. WOODLOCK
                                  UNITED STATES DISTRICT JUDGE